IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE L. McMULLEN, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2449-L (BH) |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and the District Court's *Order of Reference*, filed April 27, 2005, this matter has been referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed August 23, 2005; *Commissioner's Motion for Summary Judgment*, filed October 18, 2005; and *Plaintiff's Reply Brief*, filed December 22, 2005. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED,** *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

## I. BACKGROUND[1]

### A. Procedural History

Willie L. McMullen ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits and supplemental security income payments under Title II and Title XVI of the Social Security Act.  On December 28, 2001, Plaintiff filed an application for disability insurance benefits and supplemental security income payments.[2]  (Tr. at 15, 98-100.)  Plaintiff claimed he was disabled due to Human Immunodeficiency Virus ("HIV").  (Tr. at 16.)  Plaintiff's application was denied initially and upon reconsideration.  (Tr. at 15.)  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 53.)  A hearing, at which Plaintiff personally appeared and testified, was held on October 22, 2003. (Tr. at 314-62).  On December 17, 2003, the ALJ issued his decision finding Plaintiff not disabled.  (Tr. at 12-22.)  The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision.  (Tr. at 5-8.)  Thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. at 5.)  Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on November 12, 2004.

**B.  Factual History**

   ### 1.  Age, Education, and Work Experience

Plaintiff was born on October 15, 1958. (Tr. at 98.)  At the time of the hearing before the ALJ, he was 45 years old.  (*See* Tr. at 319.)  He graduated from high school.  (Tr. at 320.)  His past relevant work experience included work as a sander for a furniture company, a nurse's aide, a home health aide, and a cook.  (Tr. at 321, 326.)  Plaintiff last worked on January 1, 2000.  (Tr. at 16, 21.)

---

[2]Plaintiff previously filed Title II and Title XVI applications for disability benefits and supplemental security income payments on July 31, 1997, both of which were initially denied on October 22, 1997.  (Tr. at 15; *see* Tr. at 23-33.)  These applications are not at issue in the instant case.

### *2. Medical Evidence*

In 1996, Plaintiff fell and broke his dominant right hand in three places at home.  (Tr. at 323-24.)  His right hand remained functional, although it swelled and caused pain with repetitive use. (Tr. at 21, 325.)

Plaintiff was diagnosed as HIV positive on December 5, 2001.  (Tr. at 187, 195.)  He briefly underwent Highly Active Anti-Retroviral Therapy (HAART) under the direction of his care provider at the AIDS Resources of Rural Texas ("ARRT") clinic in Waxahachie, Texas.  (Tr. at 176, 250.) However, after chest and arm pain prompted a visit to the emergency room on July 1, 2002, he ceased the HAART regimen on the advice of the emergency room physician and his ARRT care provider.  (Tr. at 251-72.)  He did not resume anti-retroviral treatment therapy.  (*See* Tr. at 277-78.)

Plaintiff had no psychiatric history prior to February 6, 2003, the date on which he underwent an initial psychiatric evaluation due to insomnia and feelings of depression.  (Tr. at 226-29.)  He was diagnosed with depression, and the assessment noted that he appeared to be coping with his HIV diagnosis.  (Tr. at 229.)  On October 9, 2003, at the request of Plaintiff's attorney, Plaintiff's psychiatric mental health nurse practitioner ("PMHNP") completed a psychiatric/psychological impairment questionnaire.  (Tr. at 233-40.)  The questionnaire indicated that Plaintiff had begun to experience auditory hallucinations in the previous two weeks; he had never experienced such symptoms previously.  (Tr. at 235.)  The PMHNP diagnosed Plaintiff with "major depressive disorder, severe, with psychotic features." (Tr. at 233.)  The PMHNP noted that he had moderate and mild mental limitations in understanding and memory, concentration and persistence, social interaction, and adaption, with marked limitation in the ability to carry out detailed instructions.  (Tr. at 233.)  She noted that Plaintiff's prognosis for his depression was "fair with ongoing treatment and

- 3 -

support." *Id*.

### 3. Hearing Testimony

A hearing was held before the ALJ on October 22, 2003. (Tr. at 314.) Plaintiff appeared personally and was represented by an attorney. *Id.* Plaintiff testified that he was born on October 15, 1958, and had graduated from high school. (Tr. at 319-20.) He further testified that he last worked as a cook at a nursing home in August 1999.[3] (Tr. at 320.) He previously worked as a sander for a furniture company, a home health aide, and a nurse's aide. (Tr. at 321-22.)

Plaintiff testified that he contracted HIV in 2000. (Tr. at 325.) He was not diagnosed until December 5, 2001, when he became ill shortly after being released from jail. (Tr. at 326.) He testified that he is unable to work due to his HIV symptoms, and that but for his HIV, he would still be working today. (Tr. at 327.) Plaintiff stated that he experienced night sweats, a fever, and had a urinary tract infection that limited him to an average of two hours of sleep per night due to frequent trips to the restroom. (Tr. at 327-28.) Plaintiff also attributed vomiting and diarrhea to his HIV. (Tr. at 335.) In addition to the mentioned physical symptoms, Plaintiff testified that he suffered from depression-induced sadness, irritability, insomnia, and hallucinations. (Tr. at 337-38.)

After hearing Plaintiff's testimony, the ALJ asked the vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and work background. (Tr. at 353-54.) The VE was asked to assume that the individual was limited to lifting no more than 20 pounds occasionally and 10 pounds frequently, but could otherwise perform a full range of light exertional jobs except that he was precluded from constant handling and fingering with his dominant hand. The hypothetical individual was limited to understanding, remembering and carrying out simple

---

[3]A work history report completed by Plaintiff on January 18, 2002, for the Social Security Administration indicates that he held his position as a cook from August 1999 until October 2001. (*Cf*. Tr. at 117, 127.)

instructions; using appropriate judgment to make only simple, work-related decisions; maintaining sufficient concentration to perform simple, repetitive tasks; and adapting to routine changes that accompany simple, unskilled work.  The hypothetical individual could get along appropriately with co-workers and peers and respond appropriately to instructions and criticism from supervisors in an unskilled environment.

In response to this hypothetical, the VE testified that such an individual would be precluded from performing his past work as a sander, a nurse's aide, a home health aide, and a cook.  (*See* Tr. at 354.)  However, the VE testified that Plaintiff could work as a telephone solicitor, which the United States Statistical Publishing Company ("USSPC") identified as both light and unskilled and sedentary and unskilled.  (Tr. 354.)  The VE referenced the USSPC in support of her testimony that there are 14,089 light, unskilled telephone solicitors for the regional economy and 244,892 for the national economy.  (Tr. at 355.)  The VE testified that the hypothetical individual with Plaintiff's residual functional capacity was capable of working as an information clerk, with 12,670 regional and 98,685 light, unskilled information clerk positions available.  *Id*.  The position of cashier also fit the hypothetical, with 204,125 regional and 955,069 national positions available.  The USSPC was the source for all of the VE's data.  (*See* Tr. at 354-55.)

The ALJ proposed a hypothetical individual with the same exertional limitations as Plaintiff and added that the individual had the mental limitations identified by Plaintiff's testimony and in the checklist completed by Plaintiff's PMHNP.  (Tr. at 355-56.)  The VE testified that such an individual would have difficulty sustaining competitive work.  (Tr. at 356-57.)

**C. ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on December 17, 2003.  (Tr. at 12-22.)  The ALJ found that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits and was insured for benefits through the date of the decision.  (Tr. at 20, ¶1.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability, January 1, 2000.  (Tr. at 21, ¶2.)  In addition, he found that although Plaintiff's HIV was a severe impairment, it did not meet or medically equal one of the listed impairments in Appendix I, Subpart P of 20 C.F.R. 404.  (Tr. at 21, ¶3-4.)  The ALJ further found that claimant's allegations regarding his limitations were not totally credible since they were unsupported by the medical evidence in the record.  (Tr. at 21, ¶5; *see* Tr. at 18.)

The ALJ determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours out of an 8 hour workday; and stand, walk, or both for 6 hours out of an 8 hour workday.  (Tr. at 21, ¶7.)  The ALJ found that Plaintiff had to avoid constant handling or fingering with his right hand.  *Id*.  The ALJ further found that Plaintiff had the mental limitations of being able to understand, remember, and carry out only short and simple instructions, and perform simple, repetitive tasks in an unskilled environment.  *Id*.

Although Plaintiff was unable to perform his past relevant work as a sander, nurse's aide, home health aide, or cook, the ALJ considered Plaintiff's residual functional capacity and relevant vocational characteristics and concluded that he had the residual functional capacity to perform a significant range of light work.  (Tr. at 21, ¶8, 12.)  The ALJ found a significant number of jobs in the national economy that Plaintiff could perform with his residual functional capacity.  (Tr. at 21, ¶13.)  Examples of these jobs included telephone solicitor, information clerk, and cashier.  *Id*.

Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, at any time through the date of his decision. (Tr. at 22, ¶14.)

## II.  ANALYSIS

### A.  Legal Standards

#### *1.  Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  Thus, the

Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision.  *See id.*

### 2. *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1.     An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.     An individual who does not have a "severe impairment" will not be found to be disabled.

3.     An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.     If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.     If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## B.  Issue for Review

Plaintiff asserts that the ALJ's Step 5 finding that Plaintiff can perform new occupations despite his lack of transferrable skills and his inability to perform occupations demanding more than "short and simple instructions" and "simple, repetitive tasks" is unsupported by substantial evidence.  (Brief at 9.)  Plaintiff contends that telephone solicitor, information clerk, and cashier jobs are not within his limitations to unskilled occupations requiring only "short and simple" instructions, (*id.*), and that the VE's testimony regarding the functional requirements of those jobs conflicts with the requirements set forth in the Dictionary of Occupational Titles ("DOT").  (*See* Brief.)  Because the VE's testimony was not consistent with the DOT, Plaintiff argues, the ALJ was required by Social Security Ruling 00-4p to resolve any conflict before relying on the VE's evidence to deny disability at Step 5.  (Brief at 14.)

### 1.  Social Security Ruling 00-4p

Social Security Ruling 00-4p requires that prior to relying upon evidence from a VE or

vocational specialist ("VS") to support a determination of disability, the ALJ must identify and obtain a reasonable explanation for any apparent conflicts between occupational evidence provided by a VE or VS and information in the DOT or its companion publication, the Selected Characteristics of Occupations (SCO) defined in the Revised DOT. SSR 00-4p, 2000 WL 1898704, *1-2 (S.S.A., Dec. 4, 2000). As part of his duty to fully develop the record at the hearing level, the ALJ must inquire on the record whether or not there is such an inconsistency. *Id.* at *2. Furthermore, the ALJ must also explain in the decision how any identified conflict was resolved. *Id.* at *1.

In the instant case, the VE relied upon the USSPC for examples of jobs that a hypothetical person with Plaintiff's residual functional capacity could perform. (*See* Tr. at 354-55.) At no point during the administrative hearing did the ALJ ask the VE if her testimony conflicted with information in the DOT or SCO as required by SSR 00-4p, however.[4] (*See* Tr. at 351-61.)

Furthermore, the ALJ determined that Plaintiff is capable of unskilled work that requires "short and simple" instructions. (Tr. at 21, ¶¶7, 11.) According to the DOT, unskilled work corresponds to a specific vocational preparation ("SVP") level of 1-2. SSR 00-4p, 2000 WL 1898704, at *3; *see* 20 C.F.R. 404.1568(a). The DOT's General Educational Development scale restricts those who can apply "commonsense understanding to carry out simple one- or two-step instructions" to a reasoning development level of one. DEPT. OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, APPENDIX C (4th ed. 1991). A person with a reasoning level of two must be able to "carry out detailed but uninvolved written or oral instructions." *Id.*

---

[4]Although the ALJ and the VE classify Plaintiff's previous work as a sander according to the DOT, the USSPC is the source of the VE's information for the three jobs listed by the VE that Plaintiff could perform. (*See* Tr. at 353-56.)

Since Plaintiff is an unskilled worker capable of following "short and simple" instructions, he is limited to jobs with an SVP of 1-2 and a reasoning level of one. Despite these limitations, none of the jobs identified by the VE comport with Plaintiff's residual functional capacity. A telephone solicitor has an SVP of three. (*See* DOT at § 299.357-014). An information clerk has a reasoning level of four, and a cashier has a reasoning level of three. (*See* Brief at 19-21; DOT at §§ 237.367-018, 211.462-010). Plaintiff has therefore identified direct and obvious conflicts between the VE's characterization of the jobs she found Plaintiff capable of performing and the skill levels provided for those jobs in the DOT. *See Carey*, 230 F.3d at 146-47; *see Bagwell v. Barnhart*, 338 F.Supp.2d 723, 737-38 (S.D. Tex. 2004).

The Commissioner raises three arguments to counter Plaintiff's claim that these conflicts were not substantial evidence upon which the ALJ could base a finding of not disabled. The Commissioner first asserts that Plaintiff's arguments are baseless because the VE did not reference the DOT in her testimony regarding what jobs Plaintiff could perform. (Resp. at 2-3.) The Social Security Administration regulations are clear that the DOT is but one source of information that may be considered by the ALJ when taking administrative notice of jobs that exist in the regional and national economy. *See* 20 C.F.R. § 404.1566(d) and (e). In addition, SSR 00-4p explicitly states that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2; *Siller v. Barnhart*, 2005 WL 1430361, *7-8 (W.D. Tex. June 17, 2005) (finding that neither the DOT nor VE testimony should automatically be accorded controlling weight.) However, "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. When there is an "apparent unresolved conflict" between the DOT and VE or VS

testimony, the ALJ must elicit a reasonable explanation for the discrepancy. *Id*. Thus, merely because the VE did not reference or rely upon the DOT does not mean that her testimony need not be consistent with the DOT. Furthermore, although the VE did not rely upon the DOT, any conflicts between her testimony and the DOT should have been resolved before the ALJ made a determination of disability based upon the VE's testimony.

The Commissioner's second argument is that Plaintiff has failed to show a direct and obvious conflict between the VE's testimony and the DOT. (Resp. at 3,5.) In support of this assertion, the Commissioner relies upon *Carey v. Apfel*, which found that the VE's clear and unchallenged testimony that a claimant with one arm could perform a number of jobs was adequate to support the ALJ's determination that the claimant was not disabled. 230 F.3d 131, 147 (5th Cir. 2000). However, *Carey* is distinguishable from the instant case in several ways. First, *Carey* was issued on October 5, 2000, prior to the Social Security Administration's requirement in SSR 00-4p that the ALJ resolve conflicts between VE testimony and DOT job descriptions. *Cf*. SSR 00-4p, 2000 WL 1898704 (issued on Dec. 4, 2000). Second, although *Carey* faults the claimant for not exploring the alleged discrepancy during the administrative hearing, the subsequently issued SSR 00-4p expressly places the affirmative responsibility on the ALJ to ask about any discrepancies between VE or VS evidence and information provided in the DOT. *Carey*, 230 F.3d at 145-46; *cf*. SSR 00-4p, 2000 WL 1898704, at *4. Third, the alleged discrepancy in *Carey* was mitigated by that VE's specific testimony that the claimant could perform the identified jobs with his specific limitations. *Carey*, 230 F.3d at 146. In this case, although the VE responded to the ALJ's hypothetical individual based upon Plaintiff's residual functional capacity, she did not address the discrepancy between Plaintiff's skill level and the higher skill levels required by the jobs (as defined by the DOT) she identified

using the USSPC.  (*See* Tr. at 354-56.)  Finally, the Fifth Circuit held in *Carey* that if the conflict is "implied or indirect," the ALJ may rely on a VE's testimony "provided that the record reflects an adequate basis for doing so."  230 F.3d at 146.  The Fifth Circuit distinguished the indirect conflict involved in *Carey* from direct and obvious conflicts such as when the VE's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT.  Since the Fifth Circuit distinguished between "implied and indirect" and "direct" conflicts in *Carey*, a reasonable inference can be drawn that a more stringent rule might apply when the VE's testimony directly and obviously conflicts with DOT job descriptions.[5]  *See Bagwell*, 338 F.Supp.2d at 737-38.  Thus, upon closer examination, *Carey* actually supports Plaintiff's position since the instant case involves a direct and obvious conflict between the VE's testimony and the DOT.

The Commissioner's third and final argument is that Plaintiff's counsel had an opportunity to cross-examine the VE to correct any perceived discrepancies between her testimony and the job descriptions in the DOT.  (Resp. at 3.)  "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."  SSR 00-4p, 2000 WL 1898704, at *4.  Since the burden is on the ALJ to fully develop the record prior to determining disability, the claimant is not required to raise the issue of any discrepancy at the hearing.[6]  *Romine*

---

[5]The Fifth Circuit has not yet addressed whether an  ALJ's decision denying benefits lacks substantial evidentiary support if based on a VE's testimony that directly and obviously conflicts with the DOT's description of exertional requirements or skill levels required for particular jobs.  *See Bagwell*, 338 F.Supp.2d at 737-38.

[6]The Commissioner cites to *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994), in support of the proposition that Plaintiff's counsel has the obligation to correct any perceived deficiencies in the VE's testimony.  (Resp. at 3.) However, *Bowling* is inapposite since it addresses defective hypothetical questions posed by the ALJ.  *Bowling*, 36 F.3d at 436.  Furthermore, *Bowling*, a 1994 case, pre-dates SSR 00-4p, which was issued on December 4, 2000.

- 13 -

*v. Barnhart*, 454 F.Supp.2d 623, 627-28 (E.D. Tex. 2006) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006)). Thus, the responsibility lies with the ALJ to ask about any possible conflict between the VE's testimony and the DOT. The ALJ in the instant case did not make the necessary inquiry at the hearing prior to determining that Plaintiff was not disabled.

In sum, the testimony provided by the VE at the administrative hearing regarding the jobs she believed Plaintiff was capable of with his residual functional capacity directly conflicted with the skill level requirements for those jobs as defined by the DOT. Although the DOT is but one source of information for administrative notice of jobs in the national economy, the ALJ had an affirmative responsibility to ask the VE whether her testimony conflicted with the DOT and to resolve any conflict prior to relying upon the VE's testimony in his determination of disability. Since the ALJ did not identify and obtain a reasonable explanation for the conflict, he did not follow SSR 00-4p in making his determination of Plaintiff's disability.

### 2. Error resulted in prejudice

The Court must now consider whether the ALJ's failure to follow SSR 00-4p resulted in prejudice to Plaintiff. "Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981) (citing *Pac. Molasses Co. v. Fed. Trade Comm'n*, 356 F.2d 386, 390 (5th Cir.1966)). "Violation of a ruling usually constitutes legal error, but such error warrants remand only if it results in prejudice." *Romine*, 454 F.Supp.2d at 628. In actions for judicial review, a claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

In the instant case, Plaintiff has shown that he is incapable of meeting the skill requirements

for each of the jobs identified by the VE at the administrative hearing.  The ALJ relied upon the VE's testimony in his decision, but since the VE's testimony conflicted with the DOT, the determination that Plaintiff is not disabled is unsupported by substantial evidence.  The Commissioner asserts that remand is not warranted because the "VE could easily testify about a voluminous number of light, unskilled occupations Plaintiff could perform" with his residual functional capacity.  (Resp. at 7.)  While this may be true, the Court cannot speculate upon what evidence a VE might present at an administrative hearing to establish Plaintiff's lack of disability. The ALJ therefore has not met his burden at Step Five to show that there is other gainful employment available in the national economy that Plaintiff is capable of performing.  *Greenspan*, 38 F.3d at 236.

## III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's *Motion for Summary Judgment* be **GRANTED** and the *Commissioner's Motion for Summary Judgment* be **DENIED**. The Court further recommends that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration consistent with these findings.

Furthermore, on remand the ALJ must, as a part of his Step Five analysis, resolve any conflict between the VE's testimony and the DOT descriptions for jobs which Plaintiff might be capable of performing with his residual functional capacity.

**SO RECOMMENDED**, on this 17th day of May, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 16 -